ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| PEDRO VILLANUEVA AREIZAGA<br><br>Apelado<br><br>v.<br><br>ESTADO LIBRE ASOCIADO DE PUERTO RICO<br><br>Apelante | KLAN202300899 | *Apelación* procedente del Tribunal de Primera Instancia, Sala de Ponce<br><br>Caso Núm.: PO2022-CV01634<br><br>Sobre: Impugnación de Confiscación |
|---|---|---|

Panel integrado por su presidenta, la Juez Brignoni Mártir, el Juez Candelaria Rosa, la Jueza Álvarez Esnard y el Juez Campos Pérez[1]

Campos Pérez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 27 de noviembre de 2024.

Comparece el Estado Libre Asociado de Puerto Rico (Estado o parte apelante) mediante escrito de apelación y nos solicita la revocación de la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala de Ponce (TPI) el 27 de junio de 2023.[2] En esta, el TPI ordenó la devolución de cierto vehículo de motor perteneciente al demandante o, en caso de no estar disponible, el monto de tasación más intereses computados desde la fecha de la ocupación.

Por los fundamentos que expondremos a continuación, confirmamos *la Sentencia* apelada.

**I.**

El 4 de mayo de 2022, el señor Pedro Luis Villanueva Areizaga (señor Villanueva Areizaga) salió a hacer unas compras en el centro comercial Plaza del Caribe en Ponce acompañado de un amigo identificado como Josué. El señor Villanueva Areizaga, quien reside en Aguadilla, condujo su vehículo Volkswagen[3] hasta el hogar de Josué en Aguada para trasladarse hasta el centro comercial *en el*

---

[1] Mediante Orden Administrativa OATA-2023-212 se designa al Juez José Ignacio Campo Pérez, en sustitución de la Hon. Karilyn M. Díaz Rivera.
[2] Notificada el 30 de junio de 2023.
[3] Modelo Jetta SE, color blanco, año 2007, tablilla IVB-062 del año 2017 con el número de vin 3VWDB7AJ5HM284517.

Número Identificador

SEN2024_____

*vehículo Dodge Ram Pickup perteneciente a Josué.* Así pues, el señor Villanueva Areizaga dejó su vehículo en la residencia que Josué comparte con sus padres, dejándole a estos las llaves de su vehículo en caso de que tuvieran que moverlo en algún momento.

El dúo de amigos llegó al centro comercial alrededor de las 4:30 pm cuando se suscitó una discusión entre el señor Villanueva Areizaga y Josué. El desenlace de dicha discusión fue que Josué abandonó las inmediaciones del centro comercial en su vehículo y dejó varado al señor Villanueva Areizaga en Ponce. Ante este cuadro, el señor Villanueva Areizaga llamó a su amigo Xavier Alexis Pagán Quintana (señor Pagán Quintana) para que buscara su vehículo en la residencia de Josué y lo recogiera en el centro comercial. El señor Pagán Quintana accedió y procedió a hacer lo solicitado.

Cerca de las 7:30 pm, el señor Pagán Quintana llamó al señor Villanueva Areizaga para informarle que a su llegada al centro comercial, agentes de la policía lo interceptaron en el área del estacionamiento. El señor Villanueva Areizaga salió del centro comercial y se dirigió al área del estacionamiento cerca de las tiendas *Starbucks* y *Macy's* para corroborar el relato. Al llegar al área, el señor Villanueva Areizaga vio al señor Pagán Quintana esposado junto a varios agentes del orden público, entre estos, el Agt. Radamés Pagán Mercado (Agt. Pagán Mercado) y el Agt. Juan Quiñones Ramírez (Agt. Quiñones Ramírez).

El Agt. Pagán Mercado le informó al señor Villanueva Areizaga que el señor Pagán Quintana estaba bajo arresto porque se le ocupó un arma de fuego para la cual no tenía licencia y una sustancia sospechosa. El Agt. Pagán Mercado le comunicó que ante este hallazgo, el vehículo también sería ocupado por el momento. Enfadado con la situación, el señor Villanueva Areizaga regresó al interior del centro comercial. Más tarde, volvió al estacionamiento y descubrió que los agentes de la policía ocuparon su vehículo. Sin

manera de volver a Aguadilla, el señor Villanueva Areizaga pasó la noche en un hotel en Ponce.

El 27 de mayo de 2022, el Departamento de Justicita le remitió una carta al señor Villanueva Areizaga explicando que la ocupación del vehículo se debió a que el mismo se utilizó el 4 de mayo de 2022 en violación a la Ley de Sustancias Controladas, Ley Núm. 4 de 23 de junio de 1971 y la Ley de Armas de Puerto Rico, Ley Núm. 1698 de 11 de diciembre de 2019.[4] Por ello, se emitió una orden de confiscación el 11 de mayo de 2022.[5] Por estos hechos, el Estado le radicó cargos al señor Pagán Quintana por violación a los Arts. 401 y 404 de la Ley de Sustancias Controladas y el Art. 6.05 de la Ley de Armas. Un juez encontró Causa Probable y se le fijó una fianza de $3,000. No obstante, el 6 de septiembre de 2022 se determinó No Causa para juicio.[6] Posteriormente, se determinó No Causa para juicio en Vista Preliminar en Alzada. De manera que, se decretó el archivo de los cargos imputados contra el señor Pagán Quintana.[7]

El 20 de junio de 2022, el señor Villanueva Areizaga presentó una demanda contra el Estado sobre impugnación de confiscación.[8] En síntesis, el señor Villanueva Areizaga alegó que el Estado no tenía una orden previa para registrar el vehículo y que por ello la evidencia incautada era inadmisible. De manera que, la confiscación fue contraria a la Ley Uniforme de Confiscaciones, Ley Núm. 119 de 12 de julio de 2011 (Ley Núm. 119-2011). Por todo lo cual, el señor Villanueva Areizaga le solicitó al TPI que no se dispusiera del vehículo y, que declarara nula y sin valor la confiscación.

El 1 de julio de 2022, el Estado presentó su contestación a la demanda en la cual aceptó la ocupación del vehículo del señor Villanueva el 4 de mayo de 2022.[9] Por otro lado, negó las alegaciones

---

[4] Entrada Núm. 32 de SUMAC, Exhibit 3.
[5] Entrada Núm. 34 de SUMAC, Exhibit A.
[6] Apéndice del Recurso, pág. 39.
[7] Apéndice del Recurso, págs. 42-50.
[8] Apéndice del Recurso, págs. 1-3.
[9] Apéndice del Recurso, págs. 4-7.

esenciales de la demanda y levantó como defensas afirmativas que el señor Villanueva Areizaga no demostró tener legitimación activa sobre el vehículo confiscado; que la parte demandante no cumple con los requisitos de tercero inocente y que la confiscación se efectuó de conformidad con la Ley Núm. 119-2011.

El 14 de julio de 2022 se celebró una Vista de Legitimación Activa.[10] Tras el desfile de prueba, el TPI dictó *Minuta Resolución* en la cual le reconoció legitimación activa al señor Villanueva Areizaga para presentar la causa de acción de epígrafe.

Luego de varios trámites procesales, el TPI celebró un juicio en su fondo los días 15 y 22 de mayo de 2023. En este declaró el señor Villanueva Areizaga, el Agt. Quiñones Ramírez y el Agt. Pagán Mercado. Tras examinar y aquilatar la prueba documental y testifical, el TPI emitió una *Sentencia* el 27 de junio de 2023, notificada el 30 de junio de 2023.[11] El TPI formuló las siguientes determinaciones de hechos:[12]

1. El Sr. Pedro Villanueva Areizaga es el dueño registral del vehículo marca Volkswagen, modelo Jetta del año 2017 y matrícula IVB-062.
2. El 4 de mayo de 2022 varios agentes de la Policía de Puerto Rico intervinieron con el Sr. Xavier A. Pagán Quintana, ya que alegaban que el joven había utilizado el vehículo mencionado en el párrafo anterior en violación al Artículo 401 y 404 de la Ley de Sustancias Controladas y el Artículo 6.5 de la Ley de Armas.
3. El vehículo fue ocupado por la Policía de Puerto Rico el 4 de mayo de 2022 y se ordenó la confiscación el 11 de mayo de 2022.
4. La carta de notificación de confiscación fue enviada el 31 de mayo de 2022 al demandante.
5. El 5 de mayo de 2022 le fueron radicados a Xavier A. Pagán Quintana cargos por violación al Artículo 6.5 de la Ley de Armas, Artículo 401 y Artículo 404 de la Ley de Sustancias Controladas.
6. El 6 de septiembre de 2022 se determinó No Causa para juicio al imputado Xavier A. Pagán Quintana de los hechos que provocaron la confiscación del vehículo en los casos J1VPV202200668-70.[13]

---

[10] Apéndice del Recurso, págs. 8-11.
[11] Apéndice del Recurso, págs. 86-103.
[12] Los primeros siete hechos fueron estipulados y consignados por las partes en el Informe Preliminar de Conferencia con Antelación a Juicio presentado el 24 de marzo de 2023.
[13] Exhibit 4 de la parte demandante.

7. El vehículo no fue reportado como hurtado para el día de los hechos 4 de mayo de 2022 por su dueño registral Pedro L. Villanueva Areizaga.

8. El demandante, Pedro Luis Villanueva Areizaga, es residente del pueblo de Aguadilla, y es Contador de profesión.

9. El demandante es el dueño del vehículo objeto del presente caso, y declaró que dicho vehículo fue adquirido mediante subasta de Universal en el año 2017.

10. El demandante indicó que el día 4 de mayo de 2022 salió del pueblo de Aguada con un amigo de nombre Josué a hacer unas compras en el Centro Comercial Plaza Del Caribe en Ponce.

11. El demandante indicó que se trasladaron en el vehículo de su amigo Josué, una Dodge Ram Pickup. El demandante dejó su vehículo Volkswagen Jetta color blanco en Aguada, en la residencia de su amigo Josué.

12. El demandante explicó que Josué reside con sus padres así que les dejó a ellos las llaves del vehículo por si tenían que moverlo en algún momento.

13. Una vez llegaron a Plaza del Caribe, alrededor de las 4:30 pm, el demandante y Josué tuvieron una discusión que provocó que su amigo se molestara y se fuera, dejando al demandante "a pie" en el centro comercial.

14. El demandante indicó que procedió a llamar al Sr. Xavier A. Pagán Quintana, quien es su amigo, se conocen desde que eran pequeños, le tiene confianza y era la persona que le podía resolver en ese momento. Le solicitó que buscara su vehículo Jetta en la casa de Josué y le hiciera el favor de recogerlo en Plaza del Caribe en Ponce, a lo que su amigo Xavier A. Pagán accedió.

15. El demandante indicó que el Sr. Xavier A. Pagán lo llamó cuando llegó a Plaza del Caribe a eso de las 7:30 pm y le informó "que los guardias lo habían interceptado". Al momento de los hechos, el demandante se encontraba dentro del centro comercial.

16. El demandante indicó que salió a ver si era verdad pues no le creía al Sr. Xavier A. Pagán. No obstante, al salir vio que el Sr. Xavier A. Pagán estaba esposado y había varios agentes de la Policía, por el área de estacionamiento cerca de las tiendas Starbucks y Macy´s.

17. El demandante indicó que se molestó por la situación y regresó al interior del centro comercial a la tienda Macy´s. Posteriormente, el demandante volvió a salir del centro comercial y se percató que se habían llevado el vehículo, que fue ocupado.

18. El demandante indicó que únicamente autorizó al Sr. Xavier A. Pagán a recogerlo en el centro comercial, ninguna otra gestión.

19. El demandante indicó que anteriormente nunca había delegado en Xavier A. Pagán su vehículo, pero era la única persona que podía resolverle en ese momento.

20. El demandante declaró que desconocía que en esa misma fecha se estaban celebrando las Justas Interuniversitarias en Ponce.

21. El demandante indicó que como su vehículo fue ocupado, se tuvo que quedar en Ponce a dormir esa noche en un hotel y al otro día lo recogió su hermano.

22. El demandante se reiteró en que él no fue quien condujo ni estacionó el vehículo en Plaza del Caribe, sino que fue el Sr. Xavier A. Pagán Quintana.

23. El Agente Juan E. Quiñones Ramírez, placa 15167, trabaja para la Policía de PR hace aproximadamente 35 años, de

los cuales hace tres (3) años que está adscrito para División de Inteligencia Criminal de Ponce.

24. Con relación a los hechos ocurridos el 4 de mayo de 2022, el Agente Quiñones declaró que ese día a eso de las 8:40 pm el Teniente Dávila, Director de la División de Inteligencia Criminal, le brindó instrucciones de ayudar a un compañero a realizar el inventario de vehículo ocupado lo que se conoce como la PPR-128. Se había hecho una intervención que resultó con un arresto por Ley de Sustancias Controladas y la Ley de Armas. El vehículo había sido transportado en la grúa de la Policía hasta el estacionamiento de la Comandancia de Ponce.

25. El Agente Quiñones narró que estando ya en el estacionamiento de la Comandancia y en presencia del imputado Xavier A. Pagán Quintana y del Agente interventor Radamés Pagán procedió a llenar el inventario de vehículo ocupado, la PPR-128.

26. Este declaró que, al abrir el baúl del vehículo, se ocuparon ocho (8) bolsas transparentes de aparente picadura de marihuana, las cuales se encontraban dentro de una lata de pintura. Luego fueron a la División de Drogas y Narcóticos en Ponce, donde se le realizó una prueba de campo a esa evidencia ocupada en presencia del imputado, en presencia del agente interventor y de supervisores.

27. El Agente Quiñones indicó que la prueba de campo resultó positiva y posteriormente se le dio conocimiento a la fiscal de turno, que en este caso era la Fiscal Fabiola Rivera Laboy, la cual impartió instrucciones al agente interventor Radamés Pagán, de someter el caso y utilizarlo a él como testigo.

28. El 11 de mayo de 2022 se emitió la Orden de Confiscación del vehículo y se estimó como valor de tasación la suma de $19,000.

29. El inventario de vehículo ocupado, la PPR-128, fue realizado en presencia del Sr. Xavier A. Pagán Quintana quien era quien tenía la posesión del carro al momento de los hechos y se hizo constar su firma en el documento.

30. El Agente Quiñones indicó que con relación a esa intervención no se arrestó a nadie más, únicamente al Sr. Xavier A. Pagán Quintana.

31. El Agente Radamés Pagán Mercado, placa 23360, trabaja para la Policía de PR hace aproximadamente 28 años. Este estuvo adscrito a la División de Drogas y Narcóticos alrededor de 16 años, y hace seis (6) años está adscrito a la División Inteligencia Criminal del área de Ponce.

32. El Agente Pagán narró que para el miércoles 4 de mayo de 2022 tomó servicio cerca de las 8:00 am en la División Inteligencia Criminal de Ponce bajo la supervisión del Sargento Vázquez Morales y como parte de un plan de trabajo conforme a las festividades de las Justas Interuniversitarias a celebrarse en Ponce. Este explicó que luego de discutir ese plan de trabajo, el supervisor le dio instrucciones de brindar patrullaje preventivo por lugares de alta incidencia criminal junto con varios compañeros en una patrulla debidamente rotulada. En la patrulla se encontraban el Agente Juan Quiñones, quien era el chofer, Agente Gabriel Rodríguez, Agente José León y el testigo Agente Radamés Pagán.

33. El Agente Pagán indicó que cerca de las 6:32 pm fueron a tomarse un café en el centro comercial Plaza del Caribe, específicamente en la tienda Starbucks. Este indicó que una vez terminaron de tomarse el café salieron al área de

afuera cerca de donde está la acera, cerca de las 7:30 pm se acordó que tenía que ir a Walgreens a buscar unos medicamentos de su esposa así que le indicó al Agente Quiñones "vámonos".

34. El Agente Pagán indicó que él iba sentado en la patrulla detrás del Agente Quiñones (chofer) y que una vez abordaron la patrulla, saliendo por uno de los estacionamientos de la parte frontal de Starbucks, se percata en extrema izquierda de un vehículo Volkswagen Jetta color blanco 4 puertas. Según el Agente Pagán la puerta del pasajero frontal derecha se encontraba abierta, la luz del panel de adentro del vehículo se encontraba encendida y había un individuo sentado en la butaca de tez blanca delgado con trenzas y una camiseta "t-shirt" negra. El Agente Pagán le indicó al Agente Quiñones que se detuviera porque el individuo estaba haciendo uso de lo que entendió era la sustancia controlada de cocaína.

35. El Agente Pagán declaró que el Agente Quiñones se detuvo y todos se bajaron pasando desapercibidos hasta donde estaba el Sr. Xavier A. Pagán Quintana, y le indicaron que era la Policía y que estaba bajo arresto. Según el Agente Pagán, el individuo se puso nervioso y dejó caer la bolsa con alegada cocaína en el área derecha de los genitales.

36. El Agente Pagán indicó que al individuo le colgaba una cartera en cuero tipo "mariconera" rectangular color azul, crema y negra, la misma se encontraba abierta. Una vez él procede a ocupar la sustancia controlada se percató que había unas "cachas" color marrón en el interior de la mariconera. Al revisar era una pistola cargada, por lo que le solicitó al Sr. Xavier A. Pagán Quintana que le mostrara su permiso de licencia para portar armas, y este le indicó que no tenía. El Agente Pagán declaró que procedió a ocupar la pistola, y la droga, puso al Sr. Xavier A. Pagán Quintana bajo arresto y le leyó las advertencias de ley. Además, se hicieron las gestiones con la grúa de la Policía para llevarse el vehículo y ocuparlo.

37. El Agente Pagán declaró que hubo un momento donde no encontraban las llaves del vehículo, por lo que tuvieron que buscar las mismas en el interior del vehículo. El Agente Pagán solicito autorización al Sr. Xavier A. Pagán Quintana para buscar las llaves en el interior. Después de alrededor de quince (15) minutos encontraron las llaves pilladas entre la butaca y la consola de los cambios. Luego, procedieron a llevarse el vehículo en la grúa de la Policía.

38. El Agente Pagán declaró que en algún momento de la intervención llegó el demandante, quien resultó ser el dueño registral del vehículo identificado como Pedro Villanueva Areizaga. El Agente Pagán indicó que le informó al demandante que habían intervenido con su amigo, que se había ocupado un arma de fuego y una sustancia, que su amigo estaba bajo arresto y que por ahora el vehículo también estaba ocupado, por lo que el Sr. Villanueva se marchó del lugar.

39. El Agente Pagán reconoció que el individuo con el que se intervino le había mencionado que ese vehículo no era de él sino de un amigo que se encontraba en la tienda Macy´s y que estaba pagando un reloj.

40. El vehículo fue ocupado y llevado al estacionamiento de la Comandancia de Ponce. Allí en la Comandancia también se le tomaron los datos personales del Sr. Xavier Alexis Pagán Quintana, quien tenía de 33 años y era del pueblo de Aguada.

41. El Agente Pagán declaró que el Agente Juan Quiñones fue quien le ayudó a realizar el inventario de vehículo ocupado,

la PPR-128, y fue quien encontró en el baúl del vehículo una lata de pintura con ocho (8) bolsas de aparente marihuana en su interior. Se le volvieron a leer las advertencias al arrestado y pasaron a la División de Drogas y Narcóticos donde el Agente Efraín Vázquez Reyes le practicó prueba de campo resultando ambas pruebas positivas, a cocaína y marihuana. La evidencia fue depositada en dos (2) sobres de evidencia.

42. El Agente Pagán declaró que posteriormente consultó el caso con la Fiscal Fabiola Rivera, la cual instruyó a radicar cargos contra Xavier A. Pagán Quintana por el Art. 401 y Art. 404 de la Ley de Sustancias Controladas y un Art. 6.05 de la Ley de Armas. El Hon. Ángel Candelario determinó causa probable y fijó una fianza de $3,000.00.

43. En cuanto a los cargos imputados al Sr. Xavier Pagán Quintana, se determinó No Causa para juicio en los casos J1VPV2022-00668-70 y en la Vista Preliminar en Alzada.

44. El Agente Pagán declaró que no se pudo relacionar al dueño del vehículo con las sustancias controladas y el arma ocupada.

45. La parte demandante no estaba en posesión del vehículo al momento de la ocupación ni es parte de ninguno de los hechos relacionados a la confiscación.

46. Al presente no existe causa criminal en contra del demandante ni contra ninguna persona por los hechos relacionados con la ocupación del vehículo.

Determinó el foro primario que de la prueba se colegía que el señor Villanueva Areizaga solo le había pedido al señor Pagán Quiñones que recogiera su vehículo en Aguada para que pudiese recogerlo en Ponce. Que esta fue la primera vez que el señor Villanueva Areizaga le pedía un favor así al señor Pagán Quiñones y que también fue la primera vez que este último utilizó el vehículo del señor Villanueva Areizaga. También encontró probado el TPI que el procedimiento criminal contra el señor Pagán Quiñones no prosperó, resultando con el archivo de los cargos en su contra. Además, del testimonio del Agt. Pagán Mercado surgió que no se pudo relacionar al señor Villanueva Areizaga con los delitos imputados porque al momento de la ocupación, no estaba en posesión del vehículo. Por todo lo anterior, el TPI declaró *Ha Lugar* la demanda incoada por el señor Villanueva Areizaga y ordenó la devolución del vehículo o, en caso de no estar disponible, el monto de tasación que este caso es la suma de $19,000 más intereses al 4.5% computados desde la fecha de la ocupación.

Inconforme, el Estado presentó una *Moción de Reconsideración al Amparo de la Regla 47 de Procedimiento Civil* el 17 de julio de 2023. El TPI emitió una *Resolución* el 7 de agosto de 2023, notificada el 9 de agosto de 2023, en la que declaró *No Ha Lugar* la moción del Estado.

Inconforme aún, el Estado acudió ante nos mediante recurso de apelación para impugnar la Sentencia del 27 de junio de 2023 y le imputó al foro de instancia la comisión del siguiente error:

> El Tribunal de Primera Instancia erró al decretar que al apelado le cobija la defensa del tercero inocente a pesar de las contradicciones en su testimonio y sin que se demostrara que este tomó las medidas cautelares necesarias para prevenir el uso ilegal de la propiedad en la comisión de un delito, como ocurrió en el presente caso.

El señor Villanueva compareció mediante escrito en oposición. Con el beneficio de ambas partes, resolvemos.

## II.

### A. Ley Uniforme de Confiscaciones

La confiscación es "[e]l acto de ocupación que lleva a cabo el Estado de todo derecho de propiedad sobre cualesquiera bienes que hayan sido utilizados en relación con la comisión de ciertos delitos". *Doble Seis Sport v. Depto. Hacienda,* 190 DPR 763, 784 (2014); *Díaz Ramos v. ELA y otros,* 174 DPR 194, 202 (2008); *Del Toro Lugo v. ELA,* 136 DPR 973, 980-981 (1994). La confiscación es, además, un procedimiento estatutario que opera como una sanción penal adicional contra los criminales y aquellos que los asisten en sus fechorías. *MAPFRE v. ELA,* 188 DPR 517, 525 (2013). Cuando se efectúa conforme a derecho, la confiscación constituye una excepción a la protección constitucional que impide la toma propiedad privada para fines públicos sin una justa compensación. *Flores Pérez v. ELA,* 195 DPR 137, 146 (2016).

Ahora bien, existen dos clases de confiscaciones, a saber: la confiscación *in personam* y la confiscación *in rem.* Nuestro máximo foro ha explicado que confiscación *in personam* de naturaleza

puramente penal ya que "es parte del proceso criminal que va dirigido contra el alegado autor del delito base que autoriza la confiscación". *Coop. Seg. Mult. v. ELA*, 180 DPR 655, 664 (2011). Por otro lado, la confiscación *in rem* es "un proceso civil en el que se va directamente contra la cosa a ser confiscada, separándolo procesalmente del encausamiento criminal contra el presunto autor del delito". *Id.*

Sabido es que en nuestra jurisdicción la Ley Núm. 119-2011, *supra*, regula el procedimiento de las confiscaciones *in rem*. De manera que, cuando alguien que posee algún interés legal sobre un vehículo lo ha puesto voluntariamente en posesión de otra persona, y esta lo utiliza para propósitos delictivos, su derecho corre la suerte del uso al que el infractor someta el vehículo. *MAPFRE v. ELA*, *supra*, pág. 525; *BBV v. ELA*, 180 DPR 681, 686 (2011).  En particular, el Artículo 9 de la Ley Núm. 119-2011, dispone que:

> **Estará sujeta a ser confiscada, a favor del Gobierno de Puerto Rico, toda propiedad que resulte, sea producto o se utilice, durante la comisión de delitos graves y de aquellos delitos menos graves en los que por ley se autorice la confiscación**, cuando tales delitos graves y menos graves se encuentren tipificados en el Código Penal de Puerto Rico, en las leyes de sustancias controladas, de armas y explosivos, en las leyes contra el crimen organizado, en las leyes de juegos prohibidos, bebidas alcohólicas, leyes fiscales, leyes contra la apropiación ilegal de vehículos, leyes de vehículos y tránsito y de embarcaciones; así como en otras leyes y en aquellos estatutos confiscatorios en los que por ley se autorice la confiscación. (Énfasis nuestro). 34 LPRA sec. 1724f.

Los criterios para determinar si procede una confiscación civil son que exista:  1) prueba suficiente y preponderante de que se ha cometido un delito, y 2) un nexo entre la comisión del delito y la propiedad confiscada.  *Doble Seis Sport v. Depto. Hacienda, supra.*

La acción de confiscación puede ser objeto de impugnación por quienes aleguen poseer un interés legal sobre la propiedad ocupada.  *MAPFRE v. ELA, supra*, pág. 525.  De esta manera, se les provee a estas personas una oportunidad de comparecer ante el

Tribunal para que presenten y demuestren las defensas que pudieran tener contra la confiscación. *Id.*, pág. 526. Ese procedimiento queda incorporado en el Artículo 15 de la Ley Núm. 119-2011, el cual dispone que:

> Las personas notificadas, según lo dispuesto en esta Ley y que demuestren ser dueños de la propiedad, podrán impugnar la confiscación dentro de los treinta (30) días siguientes a la fecha en que se reciba la notificación, mediante la radicación de una demanda contra el Estado Libre Asociado de Puerto Rico, y el funcionario que autorizó la ocupación, debiéndose emplazar al Secretario de Justicia dentro de los quince (15) días siguientes a la fecha en que se presentó la demanda. En aquellos casos que la notificación sea devuelta, los términos indicados comenzarán a computarse desde que la referida notificación sea recibida por el Departamento de Justicia. Estos términos son jurisdiccionales. El Secretario de Justicia representará al Estado Libre Asociado de Puerto Rico en todos los casos de impugnación de confiscación y formulará sus alegaciones dentro de los treinta (30) días de haber sido emplazado. La demanda deberá radicarse en la sala correspondiente del Tribunal de Primera Instancia, Sala Superior. El Tribunal tramitará estas demandas de manera expedita y los procedimientos se celebrarán sin sujeción a calendario.

> La demanda que al amparo de esta Ley se autoriza, estará sujeta estrictamente a los siguientes términos: el Tribunal ante el cual se haya radicado el pleito deberá adjudicarlo dentro del término de seis (6) meses contados desde que se presentó la contestación a la demanda, a menos que este término sea renunciado o ampliado con el consentimiento escrito de todas las partes y por causa justificada, por un término que no excederá de treinta (30) días adicionales; se presumirá la legalidad y corrección de la confiscación independientemente de cualquier otro caso penal, administrativo o cualquier otro procedimiento relacionado a los mismos hechos. El demandante tiene el peso de la prueba para derrotar la legalidad de la confiscación. El descubrimiento de prueba se llevará a cabo dentro de los primeros treinta (30) días contados a partir de la contestación a la demanda y no se extenderá a las declaraciones juradas que obren en el expediente del fiscal hasta que se tenga derecho a las mismas en alguna acción penal que exista relacionada a los hechos de la confiscación. 34 LPRA sec. 1724l.

Surge expresamente del precitado artículo que la confiscación realizada se presume correcta. Por ello, el peso de la prueba para derrotar la legalidad de la confiscación le corresponde al demandante. Nuestro foro supremo ha expresado que, para sostener una confiscación *in rem*, le correspondía "al Estado demostrar que

la propiedad confiscada fue utilizada en el curso de una actividad delictiva". *Doble Seis Sport v. Depto. Hacienda, supra*, pág. 785.

Por otro lado, es usual que de no haber prosperado el caso criminal que sirvió como base a la confiscación del bien, se pretenda utilizar esa determinación previa para que se determine la improcedencia de la confiscación. Así, el que presenta la acción de impugnación, levanta la *doctrina del tercero inocente*.

### B. Doctrina del Tercero Inocente

Nuestra jurisprudencia desarrolló lo que hoy conocemos como la doctrina del tercero inocente. Esta doctrina busca proteger a los propietarios o a los tenedores del interés legal o económico en el vehículo en situaciones en las que éstos no han puesto el vehículo en posesión del infractor voluntariamente, o cuando se han tomado medidas cautelares expresas para precaver el uso ilegal de la propiedad en la comisión de un delito. *Flores Pérez v. ELA, supra,* pág. 149; *First Bank, Univ. Ins. Co. v. ELA*, 156 DPR 77, 83 (2002). Añade el Tribunal Supremo que:

> *El carácter de tercero inocente depende de la naturaleza de la posesión o el uso que del vehículo haga el infractor.* Si éste no obtuvo la posesión de manera voluntaria o *si se apartó sustancialmente de las medidas cautelares* o las instrucciones particulares expresadas de quien entregó dicha posesión o uso, entonces es que tanto el dueño como el vendedor condicional o cualquier otro con interés en este son terceros inocentes protegidos contra la confiscación. *First Bank, Univ. Ins. Co. v. E.L.A., Id.,* pág. 84.

La persona que no fue parte del proceso criminal al presentar la acción de impugnación no puede descansar en la sentencia criminal previa para que automáticamente el Tribunal declare inválida la confiscación. No es correcto admitir la sentencia anterior bajo la doctrina de impedimento colateral por sentencia, sino coinciden las partes en ambos pleitos (el civil y el criminal). No obstante, puede utilizar la sentencia favorable del procedimiento criminal como parte de la prueba que se presente a los fines de

derrotar la presunción para demostrar que es un tercero inocente o que la confiscación fue inválida.

### C. Apreciación de la Prueba

Es norma conocida en nuestro ordenamiento jurídico que "ante la ausencia de error manifiesto, prejuicio, parcialidad o pasión, no se favorece la intervención de los tribunales apelativos para revisar la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formuladas por el Tribunal de Primera Instancia". *Ortiz Ortiz v. Medtronic Puerto Rico Operations, Co.*, 209 DPR 759, 778 (2022); *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219 (2021). Cónsono con lo anterior, la Regla 42.2 de las Reglas de Procedimiento Civil dispone que "[l]as determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos". 32 LPRA Ap. V, R. 42.2.

El Tribunal Supremo ha indicado lo que constituye que un juez adjudique con pasión, prejuicio o parcialidad, o que su determinación sea un error manifiesto, de la siguiente manera:

> [...], un juzgador incurre en pasión, prejuicio o parcialidad si actúa "movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que se someta prueba alguna". Por otro lado, enunciamos que se consideran claramente erróneas las conclusiones del foro revisado "si de un análisis de la totalidad de la evidencia, este Tribunal queda convencido de que se cometió un error, [...] [porque] las conclusiones están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida". Es decir, consideramos que se incurre en un error manifiesto cuando "la apreciación de esa prueba se distancia de la realidad fáctica o es inherentemente imposible o increíble". *Pueblo v. Toro Martínez*, 200 DPR 834, 859 (2018), citando lo dispuesto en *Dávila Nieves v. Meléndez Marín, supra.*

De otra parte, "[u]n tribunal puede incurrir en abuso de discreción cuando el juez ignora sin fundamento algún hecho

material; cuando el juez le concede demasiado peso a un hecho inmaterial y funda su decisión principalmente en ese hecho irrelevante, o cuando éste, a pesar de examinar todos los hechos del caso, hace un análisis liviano y la determinación resulta irrazonable". *Citibank, N.A. v. Cordero Badillo,* supra, pág. 736; *Pueblo v. Custodio Colón,* 192 DPR 567, 588-589 (2015).

Por otro lado, al hablar de "la discreción que tiene un tribunal de justicia" nos referimos a la facultad que tiene dicho foro para resolver de una forma u otra, o de escoger entre varios cursos de acción. *Citibank, N.A. v. Cordero Badillo, supra,* pág. 735; *García López y otro v. E.L.A.,* 185 DPR 371 (2012); *García v. Padró,* 165 DPR 324, 334 (2005). El ejercicio adecuado de tal discreción está "inexorable e indefectiblemente atado al concepto de la razonabilidad". *Id.; García v. Asociación,* 165 DPR 311, 321 (2005); *García v. Padró,* supra, pág. 335. En ese sentido, la discreción es "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *Id.; Medina Nazario v. McNeil Healthcare LLC,* 194 DPR 723, 729 (2016). Esta se "nutre de un juicio racional apoyado en la razonabilidad y fundamentado en un sentido llano de justicia; no es función al antojo o voluntad de uno, sin tasa ni limitación alguna". *Id.; SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 435 (2013).

Partiendo de esas premisas, la discreción que cobija al Tribunal de Primera Instancia en sus determinaciones discrecionales es amplia, por lo que sus decisiones merecen gran deferencia. *Id.; Mejías et al. v. Carrasquillo et al.,* 185 DPR 288, 306-307 (2012). Ello, pues es el foro primario quien conoce las particularidades del caso, tiene el contacto con los litigantes y examina la prueba presentada por éstos. *Id.,* pág. 736; *Mejías et al. v. Carrasquillo et al., supra,* págs. 306-307.

En nuestro ordenamiento judicial le **damos deferencia al juzgador de hechos en cuanto a su apreciación de la prueba testifical porque, al ser una tarea llena de elementos subjetivos, es quien está en mejor posición para aquilatarla**. *Sucn. Rosado v. Acevedo Marrero, supra*, pág. 917. Es el Tribunal de Primera Instancia el que **tuvo la oportunidad de oír y ver el comportamiento de[l] testigo.** *Id.* Por ello, cuando la evidencia directa de un testigo le merece entero crédito a este, ello es prueba suficiente de cualquier hecho. *Id.; SLG Torres-Matundan v. Centro Patología*, 193 DPR 920 (2015). Además, la Regla 110 de Evidencia dispone que un testigo que merezca entero crédito al Tribunal de Primera Instancia es prueba suficiente de cualquier hecho. 32 LPRA Ap. VI, R. 110.

De esa forma, la intervención con la evaluación de la prueba testifical procedería en casos en los que, luego de un análisis integral de la prueba, nos cause una insatisfacción o intranquilidad de conciencia tal que estremezca nuestro sentido básico de justicia. *Sucn. Rosado v. Acevedo Marrero, supra*, pág. 917; *Rivera Menéndez v. Action Service*, 185 DPR 431, 444 (2012). Este estándar de revisión, por ejemplo, restringe nuestra facultad para sustituir el criterio del foro primario a escenarios en que de la prueba admitida no exista base suficiente que apoye tal determinación. *Pueblo v. Toro Martínez, supra*, pág. 859.

Sin embargo, cuando las conclusiones de hecho del foro de primera instancia estén basadas en prueba pericial o documental, el tribunal revisor se encuentra en la misma posición que el foro recurrido. *Sucn. Rosado v. Acevedo Marrero*, supra, pág. 918; *González Hernández v. González Hernández,* 181 DPR 746 (2011).

**III.**

De la prueba ante nuestra consideración surge que el señor Villanueva Areizaga le autorizó al señor Pagán Quintana dos asuntos: que buscara su vehículo en la casa de los padres de Josué

para luego buscarlo a él en Ponce. El señor Villanueva Areizaga no autorizó ninguna otra gestión. De los testimonios prestados por los agentes interventores surge que el señor Villanueva Areizaga estaba molesto con el señor Pagán Quintana por lo sucedido. Además, el Agt. Quiñones Ramírez declaró que aún se desconocía la procedencia de la sustancia incautada y que la única persona arrestada por estos hechos fue el señor Pagán Quintana.[14]

De igual forma, surge del expediente ante nos que al señor Pagán Quintana se le radicaron tres cargos por violación a la Ley de Armas de Puerto Rico, *supra*, y a la Ley de Sustancias Controladas, *supra*. Sin embargo, estos cargos no prosperaron y el procedimiento criminal culminó con el archivo de los tres cargos.

Finalmente, surge de la prueba que el Agt. Pagán Mercado no pudo relacionar al señor Villanueva Areizaga con los delitos relacionados a las sustancias controladas ni al arma de fuego. Tampoco figura en los hechos relacionados a la confiscación del vehículo. Esto se debe a que el señor Villanueva Areizaga no estaba en posesión del vehículo cuando ocurrió la ocupación. El Agt. Quiñones Ramírez testificó que la persona a quien se le ocupó el vehículo fue al señor Pagán Quintana.[15]

Claramente, el señor Villanueva Areizaga es un tercero inocente. Por ello, creemos que el TPI actuó de manera correcta y conforme a derecho al declarar *Ha Lugar* la demanda incoada por el señor Villanueva Areizaga. No queda más, sino que confirmar la *Sentencia* apelada.

**IV.**

Por los fundamentos esbozados, confirmamos la *Sentencia* apelada. En consecuencia, se confirma la devolución del vehículo

---

[14] Transcripción de la Prueba Oral (TPO) de 15 de mayo de 2023, pág. 61, líneas 22-26 y pág. 63, líneas 21-28.

[15] TPO de 15 de mayo de 2023, pág. 60, líneas 29-31 y pág. 61, línea 1.

confiscado o, en su defecto, el monto de tasación más intereses computados desde la fecha de la ocupación.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.   La Jueza Álvarez Esnard disiente sin escrito.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones